Mark David Hunter, Esquire
Jenny Johnson-Sardella, Esquire
HUNTER TAUBMAN FISCHER & LI LLC
2 Alhambra Plaza, Suite 650
Coral Gables, Florida 33134
Tel:   (305) 629-1180
Fax:   (305) 629-8099
E-mail:  mhunter@htflawyers.com
         jsardella@htflawyers.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OPERADORA KAU-KAN, a foreign corporation, BENJAMIN BEJA LEZAMA, a foreign individual and MARIANA PINTO ESCANDON, a foreign individual, | Civil Action No.: 20-cv-2770 |
| Plaintiffs, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| PRODIGY NETWORK, LLC, a Delaware limited liability company, and RODRIGO NIÑO, an individual, | |
| Defendants. | |

Plaintiffs Operadora Kau-Kan ("Operadora"), Benjamin Beja Lezama ("Mr. Lezama") and Mariana Pinto Escandon ("Ms. Escandon") (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby file this Complaint against Defendants Prodigy Network, LLC ("Prodigy") and Rodrigo Niño ("Niño") (collectively, "Defendants").  In furtherance of the same, Plaintiffs allege as follows:

## NATURE OF ACTION

1.      Plaintiffs bring this action to recover damages arising out of Defendants' fraudulent misrepresentations and breaches in connection with a certain secured non-recourse promissory note, security agreement and subscription for secured promissory note.

## PARTIES

2.      Operadora is a foreign corporation organized and existing under the laws of Mexico, with its principal place of business in Mexico.

3.      Mr. Lezama is domiciled in Mexico City, Mexico.

4.      Ms. Escandon is domiciled in Mexico City, Mexico.

5.      Defendant Prodigy is a Delaware limited liability company with its principal place of business in New York, New York.   Upon information and belief, none of Defendant Prodigy's members are citizens of Mexico.

6.      Defendant Niño is domiciled in New York, New York and is Defendant Prodigy's manager.

## RELEVANT NON-PARTY

7.      Lisandro Videla ("Mr. Videla") is Defendant Prodigy's Vice President of Distribution.

2

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over the parties and over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2) because the action is between citizens of different states and the matter in controversy exceeds $75,000.

9.      This Court has personal jurisdiction and venue in this Court is proper pursuant to Section X of the applicable Subscription Agreement, which provides, in relevant part:

> This Subscription Agreement shall be governed by the laws of the State of New York.  Each party irrevocably agrees to submit to the exclusive jurisdiction of the state and federal courts situation in New York City, New York over any claim arising under or in connection with this Subscription Agreement.

10.     Venue is also proper pursuant to 28 U.S.C. § 1391 because Defendants maintain their principal place of business, and a substantial part of the events giving rise to the claim occurred, in the Southern District of New York.

## FACTUAL ALLEGATIONS

11.     Defendant Prodigy is engaged in providing real estate investment opportunities to global clients and operates several of its real estate investments through its various subsidiaries and affiliates.

12.     Beginning in or about January 30, 2019, Defendant Prodigy's sales agents provided Plaintiffs with an opportunity to invest in Defendant Prodigy's offering of a $5 million secured non-recourse promissory note.

13.     In presenting the offer, Defendant Prodigy claimed it was issuing a $5 million secured promissory note for the purpose of making a bridge loan to 84 William Street JV, LLC (the "JV"), the sole owner of the equity interest in AKA Wall Street, a 137-unit extended-stay hotel located at 84 William Street, New York, New York (the "Project").

14.     The purpose of the bridge loan was to capitalize Defendant Prodigy's 90% share

of a member loan to the JV in order to satisfy certain pay-down and interest reserve requirements that were requested by the JV's lenders as a condition to each loan's extension. The term of the planned bridge loan was six (6) months with one six (6) month extension and would be repaid through a refinancing that was planned for the summer of 2019.

15.     In order to make an investment in Defendant Prodigy's offering of a $5 million secured non-recourse promissory note, Plaintiffs were required to execute a subscription agreement.

16.     On or about January 30, 2019, Plaintiffs entered into the Prodigy Network, LLC Subscription Documents (Subscription For Secured Promissory Notes) (the "Subscription Agreement") and invested $1.5 million ("Subscription Amount").[1]   By entering into the Subscription Agreement, Plaintiffs agreed to purchase that certain 16% secured non-recourse promissory note dated, January 7, 2019 ("Non-Recourse Note"), and contribute the Subscription Amount.

17.     The Non-Recourse Note, including the outstanding principal and any accrued unpaid interest, was due and payable six (6) months from January 7, 2019 (the "Issue Date").

18.     The Subscription Agreement required that the subscriber, or Plaintiffs, acknowledge that, prior to acceptance and approval of the Subscription Agreement and any issuance of a secured note under the Subscription Agreement, a form of secured note and a copy of the security agreement relating to the secured notes would be made available to Plaintiffs.

19.     Accordingly, in order to secure the prompt and complete payment of the indebtedness and performance of the obligations under the Non-Recourse Note, Defendant Prodigy, pursuant to the Subscription Agreement, advised Plaintiffs that Defendant Prodigy

---

[1] Operadora's invested $1 million.  Mr. Lezama and Ms. Escandon invested $500,000.

entered into a security agreement relating to the Non-Recourse Note ("Security Agreement"), wherein Plaintiffs would be a secured party.

20.     Pursuant to the Security Agreement, Defendant Prodigy granted Plaintiffs, as a secured parties, a continuing security interest in all of Defendant Prodigy's right, title and interest in the secured promissory note payable by the JV to Defendant Prodigy ("Pledge Note"), together with the proceeds thereof (the "Collateral"), including payments of the principal and any interest.

21.     Prior to entering into the Subscription Agreement, Defendant Prodigy, through Mr. Videla, advised Plaintiffs during a call that the Pledge Note was fully-executed and that Plaintiffs had a vested interest in the Collateral.  Mr. Videla was always sure to advise investors, including Plaintiffs, that he spoke for Defendant Niño and with Defendant Niño's authority.  Defendant Niño informed Mr. Videla that the Pledge Note was fully-executed knowing that Mr. Videla would advise Plaintiffs of the same.  However, the Pledge Note was never executed.

22.     Defendant Prodigy knew at the time it represented to Plaintiffs that the Pledge Note had been executed that such representation was false.  After making their investments, Plaintiffs became aware that the Pledge Note was never executed when Plaintiffs received a copy of the unexecuted Pledge Note from Defendant Prodigy in or about November 2019.  Plaintiffs would not have made its investment pursuant to the Subscription Agreement if it knew that Defendant Niño had knowingly misrepresented that the Pledge Note was executed.

23.     Plaintiffs learned that Defendant Prodigy was experiencing difficulties meeting its financial obligations relating to the Project as well as other projects under its control, due to mismanagement and other questionable business practices.

24.     Defendant Prodigy was experiencing cash difficulties because of Defendant Niño's poor management and irresponsible financial practices.  In addition, Defendant Prodigy

and Defendant Niño are the alter egos of one another because corporate formalities were not observed, and because Defendant Prodigy's profits were utilized to fund Defendant Niño's personal expenses and distributions.

25.    According to a statement issued by Defendant Prodigy in or about June 2019, the New York projects were operating below the original performance projections and, as a result, Defendant Prodigy had to contribute $2 million towards working capital, manager loans, and withholding collection of asset management fees, to cover current and future debt obligations relating to the projects, including AKA Wall Street.[2]

26.    Upon information and belief, Defendant Prodigy's insolvency is imminent and Defendants have utilized Plaintiffs' investment for purposes other than those relating to the Project in violation of the terms of the Subscription Agreement, Non-Recourse Note, and Security Agreement.

## COUNT I –  BREACH OF CONTRACT

27.    Plaintiffs repeat the allegations contained in Paragraphs 1 through 26 as if fully set forth herein.

28.    Plaintiffs entered into a valid and binding contract with Defendants upon executing the Subscription Agreement, whereby Plaintiffs were entitled to receive its respective initial investment plus 16% interest.

29.    Plaintiffs executed the Subscription Agreement and timely paid the Subscription Amount to purchase the Non-Recourse Note issued by Defendant Prodigy.  Upon Defendant Prodigy's acceptance of Plaintiffs' executed Subscription Agreement, Plaintiffs were deemed to have executed the Non-Recourse Note and Security Agreement.

---

[2] Plaintiffs has been further informed that many of Defendant Prodigy's business units in 2018 and 2019 significantly underperformed against their budgets due to potential mismanagement.

30.     Plaintiffs fully performed their obligations under the Subscription Agreement.

31.     According to its terms, the Non-Recourse Note became due and payable six (6) months from the Issue Date (the "Maturity Date").  However, Defendants have failed to repay Plaintiffs' respective investment pursuant to the Subscription Agreement and Non-Recourse Note by the Maturity Date.

32.     As a result of Defendant Prodigy's conduct, Plaintiffs have been damaged.

## COUNT II – FRAUDULENT INDUCEMENT

33.     Plaintiffs repeat the allegations contained in Paragraphs 1 through 32 as if fully set forth herein.

34.     Defendants knowingly misrepresented to Plaintiffs that the Pledge Note was fully-executed prior to Plaintiffs execution of the Subscription Agreement.

35.     Defendants knowingly misrepresented this fact during a conference call on or about January 30, 2019.  The misrepresentations described herein were communicated to Plaintiffs in an effort to induce Plaintiffs to enter into the Subscription Agreement and agree to pay the Subscription Amount to purchase the Non-Recourse Note. (*See* ¶¶ 20, 21 and 22).

36.     Whether the Pledge Note had been executed was material to Plaintiffs in connection with its decision to invest.

37.     Defendants knew that this material misrepresentation was false at the time they communicated this information to Plaintiffs.

38.     Plaintiffs would not have invested if it had known of this material misstatement regarding the non-binding effect of the Pledge Note.

39.     Plaintiffs reasonably relied on the material misstatement that the Pledge Note was fully-executed when Plaintiffs invested in the Non-Recourse Note.

40.     Plaintiffs could not have discovered the truth of Defendants' misstatements and omissions through the exercise of ordinary diligence because the information was either kept confidential or known only by Defendants.

41.     Plaintiffs have not received a return of the Subscription Amount plus the appropriate interest as set forth in the Subscription Agreement, Non-Recourse Note and Security Agreement.  As a result, Plaintiffs have been damaged as a proximate result of Defendants' fraudulent inducement.

42.     Because Defendants engaged in their fraudulent conduct willfully and maliciously, and with the intent to damage Plaintiffs, Plaintiffs are entitled to an award of damages, including punitive damages.

## COUNT III – CONVERSION

43.     Plaintiffs repeat the allegations contained in Paragraphs 1 through 42 as if fully set forth herein.

44.     At all relevant times, Plaintiffs continue to have rights in and are entitled to the return of their investment funds.

45.     In or about January 2019, Plaintiffs were instructed to transfer the Subscription Amount to Defendant Prodigy upon Defendant Prodigy's acceptance of the Subscription Agreement.

46.     As stated above, Defendant Niño and Defendant Prodigy are alter egos of each other because Defendant Niño failed to observe corporate formalities when he commingled funds and used investment funds in Defendant Prodigy's accounts, including Plaintiffs' funds, to fund Defendant Niño's personal expenses.

47.     Defendants, by their wrongful acts, conspired to illegally take, and did illegally take funds which was rightfully owned by Plaintiffs and converted such funds for their own use and benefit.

48.     Defendants' wrongful acts included, but were not limited to, using Plaintiffs' funds to pay Defendant Niño's personal expenses.

49.     By reason of the foregoing, Plaintiffs have sustained damages in an amount to be determined at trial.

## COUNT IV – COMMON LAW FRAUD

50.     Plaintiffs repeat the allegations contained in Paragraphs 1 through 49 as if fully set forth herein.

51.     Defendants knowingly misrepresented to Plaintiffs that they were investing in an interest in the Non-Recourse Note pursuant to the Subscription Agreement while Defendants were misappropriating Plaintiffs funds to pay Defendant Niño's personal expenses.   Defendants knowingly misrepresented these facts orally during conference calls on or before January 30, 2019.

52.     These facts were material to Plaintiffs in connection with their decisions to invest.

53.     Defendants knew that all these material misrepresentations were false at the time they communicated this information to Plaintiffs.

54.     Plaintiffs would not have invested if Plaintiffs had known of these material misstatements regarding the use of their funds.

55.     Plaintiffs reasonably relied on these material misstatements and omissions, based on, among other things, Defendants explicit assurances that Plaintiffs' funds would be used to fund the Non-Recourse Note.

9

56.     Plaintiffs could not have discovered the truth of Defendants' misstatements and omissions through the exercise of ordinary diligence because the information was either kept confidential or known only be Defendants.

57.     Plaintiffs have lost approximately $1.5 million of their respective investment funds.

58.     Because Defendants engaged in their fraudulent conduct willfully and maliciously, and with the intent to damage Plaintiffs, Plaintiffs are entitled to an award of damages, including punitive damages.

## COUNT V – UNJUST ENRICHMENT

59.     Plaintiffs repeat the allegations contained in Paragraphs 1 through 58 as if fully set forth herein.

60.     Defendants were unjustly enriched at Plaintiffs' expense.  Specifically, Defendants diverted Plaintiffs' investment funds in order to enrich themselves.

61.     It is against equity and good conscience to permit Defendants to retain funds they diverted for their own personal use, including the paying of Defendant Niño's personal expenses.

62.     As a direct and proximate result of Defendants' wrongful diversion of Plaintiffs' investment funds, Defendants have been unjustly enriched to Plaintiffs' detriment.

63.     Accordingly, Plaintiffs are entitled to a judgment in their favor for the full amount by which Defendants have been unjustly enriched, in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs seek judgment in their favor and against Defendants Prodigy Network, LLC, and Rodrigo Niño for damages in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs requests a trial by jury in this matter.


Dated: April 2, 2020
      Coral Gables, Florida


                                **HUNTER TAUBMAN FISCHER & LI LLC**

                                */s/ Mark David Hunter*
                                Mark David Hunter, Esquire
                                New York Bar No. 4017331
                                Jenny Johnson-Sardella, Esquire
                                New York Bar No. 4225850
                                2 Alhambra Plaza, Suite 650
                                Coral Gables, Florida 33134
                                Tel:      (305) 629-1180
                                Fax:     (305) 629-8099
                                E-mail:   mhunter@htflawyers.com
                                             jsardella@htflawyers.com